IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Roberts Enterprises, LP, d/b/a Mayday Golf<br><br>Plaintiff,<br><br>vs.<br><br>Fun Sport, Inc., d/b/a Midway Speedway, d/b/a Fire Mountain Golf, and d/b/a Fire Mountain Rescue Mini-Golf<br><br>Defendant. | Case No. 06-490-JJF<br><br>**PUBLIC VERSION**<br><br>**(Oral hearing requested)** |

**PLAINTIFF ROBERTS ENTERPRISES, LP'S BRIEF IN REPLY TO DEFENDANT FUN SPORT INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE THE SETTLEMENT AGREEMENT**

October 22, 2007
Public Version dated: October 29, 2007

Rex A. Donnelly, IV (Delaware ID # 3492)
RatnerPrestia
1007 Orange Street, Suite 1100
Post Office Box 1596
Wilmington, Delaware 19899
PHONE: 302.778.2500
FACSIMILE: 302.778.2600
radonnelly@ratnerprestia.com

**TABLE OF CONTENTS**

I.     INTRODUCTION..................................................................................................1

II.    RESPONSIVE ARGUMENTS............................................................................2

       1.    ROBERTS ENTERPRISES' OFFER AND FUN SPORT'S ACCEPTANCE ALREADY EXPLICITLY PROVIDED FOR THE *PURPOSE* OF THE LICENSE AGREEMENT – TO PROTECT THE SERVICE MARK.................................................................................................3

       2.    FUN SPORT HAS NO SUPPORT FOR ITS ASSERTION THAT THE LICENSE AGREEMENT WOULD BE "UNREASONABLE" BECAUSE IT DID NOT ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮....................7

       3.    THIS COURT SHOULD COMPEL SPECIFIC PERFORMANCE OF THE AGREEMENT....................................................................................11

III.   CONCLUSION....................................................................................................14

# **TABLE OF AUTHORITIES**

## **STATUTES**

15 U.S.C. § 1057 (b), (c)..................................................................................13

## **CASES**

*Alro Associates, L.P. v. Hayward,*
    C.A. No. 19544, 2003 WL 22594526, at 7-8 (Del. Ch. Oct. 31, 2003)..............11

*Barcamerica Int'l USA Trust v. Tyfield Imps., Inc.*
    289 F.3d 589, 598 (9th Cir. 2002)......................................................5

*Dawn Donut Co. v. Hart's Food Stores, Inc.,*
    267 F.2d 358, 366 (2d Cir. 1959)........................................................4

*Dittrick v. Chalfant,*
    C.A. No.2156-VCL, 2007 WL 0389548 at 5 (Del. Ch. Apr. 4, 2007)..............11

*Forestein Enters., Inc. v. Quality Care-USA, Inc.,*
    874 F.2d 431, 435 (7th Cir. 1989)......................................................5

*Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,*
    549 F.2d 368, 387 (5th Cir. 1977)......................................................4

*Western Natural Gas Co. v. Cities Services Gas Co.,*
    223 A.2d 379 (Del. Super. 1996)....................................................3, 7

Plaintiff Roberts Enterprises, L.P. ("Roberts Enterprises") filed the instant Motion to Enforce the Settlement Agreement that was reached between the parties on July 27, 2007. Fun Sport, Inc. ("Fun Sport") responded and opposed Roberts Enterprises Motion on October 10, 2007. Roberts Enterprises now responds in this Reply Brief to Fun Sport's Answering Brief in Opposition to Plaintiff's Motion to Enforce Settlement Agreement ("Opposition Brief").

## I. INTRODUCTION

The record does not support Fun Sport's argument that no settlement agreement exists for this Court to enforce. Furthermore, the record fully supports that the parties entered into a written contract with which Roberts Enterprises fully complied. An offer was made by Roberts Enterprises in a correspondence dated July 25, 2007 and such offer was accepted by Fun Sport in a correspondence dated July 27, 2007. All essential terms were expressly agreed to by both parties and the parties proceeded to finalize the written agreements. *See* Roberts Enterprises Memo Ex. 6. Fun Sport's only alleged support that the parties did not have a fully enforceable contract relates to whether the license agreement should have included a provision providing ▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *See* Opposition Brief at 12-15. The record is entirely contrary to Fun Sport's argument because the expressly stated purpose of the license agreement was solely *to protect Roberts Enterprises' federally registered Service Mark* ("the Service Mark"). *See* Roberts Enterprises Memo Exs. 3 & 4. Furthermore, Fun Sport was fully aware that Roberts Enterprises could not offer ▆▆▆▆▆▆▆▆ because of an existing license agreement with Roberts Enterprises current Licensee ▆▆▆▆▆▆▆▆▆▆. *See* Opposition Brief at 3-4. The ▆▆▆▆ license agreement was provided to Fun Sport prior to Fun Sport's acceptance and specifically allows ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. *Id.*;

Roberts Enterprises Memo at 3. Fun Sport was fully aware of this portion of the agreement with ▮▮▮▮▮▮▮ prior to its acceptance.[1] *See* Opposition Brief at 4, 9. Fun Sport knew or should have known that ▮▮▮▮▮▮▮▮▮▮▮ was not part of the agreement between the parties, but now is using its late-articulated alleged need for ▮▮▮▮▮▮▮▮▮ as a means to attempt to back out of the fully enforceable contract.

## II.  RESPONSIVE ARGUMENTS

The record is clear that the essential terms of the settlement agreement were explicitly agreed upon by the parties when Fun Sport accepted Roberts Enterprises offer of July 25, 2007 in Fun Sport's correspondence of July 27, 2007. Fun Sport only alleges one disputed essential term, which is whether the license agreement would reasonably ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to Fun Sport. *See* Opposition Brief at 12-15. Based on the record containing all correspondence regarding settlement between the parties, a reasonable fact finder could only conclude that all essential terms were agreed upon between the parties as of the July 27, 2007 correspondence. The essential terms, documented in the offer by Roberts Enterprises and acceptance by Fun Sport, already explicitly provided for the *purpose* of the license agreement, which was solely for the protection of Roberts Enterprises' Service Mark. *See* Roberts Enterprises Memo Ex. 3. This agreed upon purpose to protect the Service Mark would not lead a reasonable person to believe that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ would be necessary to protect the Service Mark.

Furthermore, Fun Sport has no support for its assertion that the proffered license agreement was not "reasonable" because it failed to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Fun Sport provides no other reasons why the proffered license agreement was unreasonable. *See*

---

[1] Fun Sport discusses "a rumor" that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Roberts Enterprises is completely unaware of any such plans.

2

Opposition Brief at 12-15. It is indisputable that Roberts Enterprises was at all times specific as to the parameters of Fun Sport's permitted use of the Service Mark under the agreement. If Fun Sport had wanted more rights in the Service Mark under the agreement, it had every opportunity to negotiate such rights prior to acceptance of Roberts Enterprises offer. Fun Sport agreed to accept a reasonable license "that protects the Service Mark" so that Fun Sport could conclude this lawsuit and continue to use Roberts Enterprises federally registered Service Mark. *See* Roberts Enterprises Memo Exs. 3 & 4. Fun Sport's change of heart regarding previously agreed-upon terms is not a valid reason to back away from its agreement after acceptance.

    **1.    Roberts Enterprises' offer and Fun Sport's acceptance already explicitly provided for the *purpose* of the license agreement – to protect the Service Mark.**

Fun Sport's arguments in its Opposition Brief do *not* support its position that the parties failed to enter into a fully enforceable settlement agreement. The parties expressly agreed upon the *purpose* of the license agreement – to protect the Service Mark. Fun Sport's Opposition Brief is correct in at least one respect: "under Delaware law, objective manifestations of assent, not subjective intentions, control the formation of a contract." Opposition Brief at 11 (citing *Western Natural Gas Co. v. Cities Services Gas Co.*, 223 A.2d 379 (Del. Super. 1966).

Fun Sport argues in its Opposition Brief that an alleged essential term of the license agreement had not been reached and therefore, the parties could not have entered into an enforceable settlement agreement. *See* Opposition Brief at 12-13. Specifically, Fun Sport attempts to confuse the Court by arguing that there was no meeting of the minds between the parties regarding whether the purpose of the license agreement was ████████████ ████████████ *Id.* Fun Sport conveniently overlooks, however, that the purpose of the license agreement was *expressly* agreed to by Fun Sport when Fun Sport accepted Roberts Enterprises offer of July 25, 2007. Roberts Enterprises offered and Fun Sport agreed to enter

3

into a "reasonable settlement/license agreement *that protects the Service Mark*". *See* Roberts Enterprises Memo Ex. 3. Nowhere in Fun Sport's correspondence of July 27, 2007 accepting Roberts Enterprises offer did Fun Sport request that the purpose of the license agreement be anything more. *See* Roberts Enterprises Memo Ex. 4. Furthermore, Fun Sport even admits in its Opposition Brief that "on July 27, 2007, Fun Sport *agreed* to enter into a reasonable license agreement with Roberts," and it is indisputable that the language of the offer only provided for this license agreement to "protect the Service Mark." Opposition Brief at 12; Roberts Enterprises Memo Ex. 3. Fun Sport could have easily expanded the purpose of the license agreement beyond the protection of the Service Mark as a condition of its acceptance. Instead, Fun Sport expressly accepted the stated purpose of the license agreement, which was to protect the Service Mark, and only now wants to expand that purpose to encompass more. *See* Roberts Enterprises Memo Exs. 3 & 4.

A license agreement having a *purpose* to protect the Service Mark has no relation to ███████████████████████████████ A "reasonable settlement/license agreement that protects the Service Mark" was a necessary condition of settlement to ensure the validity of Roberts Enterprises Service Mark. Under Trademark law, if Roberts Enterprises does not exercise adequate quality control over Fun Sport's use of the Service Mark, Roberts Enterprises could effectively abandon the Mark by "naked licensing." *See Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 366 (2d Cir. 1959) (Holding that the Lanham Act "places an affirmative duty upon a licensor of a registered trademark to take reasonable measures to detect and prevent misleading uses of his mark by his licensees or suffer cancellation of his federal registration."); *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 387 (5th Cir. 1977) ("Courts have long imposed upon trademark licensors a duty to oversee the

4

quality of licensees' products"); *Forestein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989) (stating that a licensor has an affirmative duty to take reasonable measures to prevent misleading uses by his licensee or he suffers cancellation of his registration); *Barcamerica Int'l USA Trust v. Tyfield Imps., Inc.*, 289 F.3d 589, 598 (9th Cir. 2002) (stating that naked licensing is "inherently deceptive and constitutes abandonment" of all rights in the trademark). No reasonable person would conclude that ████████████████████ ███████ would be necessary to "protect the Service Mark".

Furthermore, Fun Sport clearly understood the necessity of this license agreement and the purpose of protecting the Service Mark as shown in the many correspondences between the parties prior to the July 27, 2007 acceptance by Fun Sport. *See* June 20, 2007 letter, Denny to Hardaway (████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████); July 11, 2007 letter, Denny to Hardaway (stating that Fun Sport "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████"). Accordingly, Roberts Enterprises required a license agreement that protects the Service Mark as a condition of settlement with Fun Sport and Fun Sport expressly accepted this purpose without further comment. The license agreement was necessary *only* for protection of the Service Mark. ████████████████████

5

cannot reasonably be expected to extend from that agreed-upon purpose.

Fun Sport's Opposition Brief suggests that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was necessary because correspondence between the parties stated that the license agreement be "reasonable" or "closely mirror" the license agreement with ▮▮▮▮▮ *See* Opposition Brief at 12-13. Fun Sport relies on these passages but conveniently fails to complete its quoted sentences and omits the below italicized portions of the sentences, which expressly provide the purpose and limited extent of the license agreement:



> See May 18, 2007 letter, Hardaway to Denny, at 2 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); June 20, 2007 letter, Denny to Hardaway, ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); June 29, 2007 letter, Hardaway to Denny (proposing ▮▮▮▮▮▮▮▮▮▮▮); July 11, 2007 letter, Denny to Hardaway ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); July 25, 2007 letter, Allen to Denny, at 2 (offering ▮▮▮▮▮▮▮▮▮▮▮); August 20, 2007 email [after acceptance] (stating that ▮▮▮▮▮▮▮)

Opposition Brief at 12-13. Every single document prior to Fun Sport's acceptance email of July 27, 2007 that Fun Sport relies on to support that an essential term had not been agreed upon between the parties, specifically provides the stated sole purpose of the license agreement – to protect the Service Mark. Accordingly, this Court should <u>not</u> be persuaded that the parties did not have a meeting of the minds regarding the purpose of the license agreement.

In summary, even if Fun Sport is correct that the specific terms of the license agreement

---

[2] Roberts Enterprises' parenthetical statement ▮▮▮▮▮▮▮▮▮▮▮ did not involve any discussion with Fun Sport relating to ▮▮▮▮▮▮▮▮ This phrase dealt with whether there would be too much oversight over Fun Sport's business as contemplated in Fun Sport's letter of July 11, 2007 stating: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Roberts Enterprises Memo Ex. 3.

had only been casually referenced in the correspondences, the agreed purpose of the license agreement was to "protect the Service Mark," not to provide Fun Sport with ███████ ███████████████. The objective manifestations of assent regarding the purpose of the license agreement should control, not Fun Sport's subjective intentions that the license also ████████████████. *See Western Natural Gas Co.*, 223 A.2d at 379. Fun Sport agreed that the purpose of the license agreement was "to protect the Service Mark," and, if Fun Sport wanted the license agreement to be used for a different or additional purpose, Fun Sport had every opportunity prior to acceptance to negotiate that additional purpose. Fun Sport did not request that the license agreement ██████████████, and no reasonable person could conclude that ████████████████████████ from the stated and agreed-purpose of the license agreement. Accordingly, Fun Sport's arguments in its Opposition Brief do *not* support its position that the parties failed to enter into a fully enforceable settlement agreement, because all of the essential terms were agreed upon, including express agreement upon the *purpose* of the license agreement – to protect the Service Mark. This Court should not be persuaded by Fun Sport's argument that the license agreement should have █████ ████████ because this argument is entirely contrary to the explicit written language accepted by Fun Sport in its correspondence dated July 27, 2007.

    **2.    Fun Sport has no support for its assertion that the license agreement would be "unreasonable" because it did not ████████████████.**

Because it is clear that the stated *purpose* of the license agreement did not contemplate including conveyance of an exclusive territory, Fun Sport asserts that ████████████ would have been part of a *"reasonable"* license agreement between the parties because Roberts Enterprises' other licenses contained ██████████. *See* Opposition Brief at 12-13. The record and documents within Fun Sport own possession at the time of acceptance do not support

7

this assertion, and Fun Sport does not even dispute that Roberts Enterprises was specific regarding the extent of any use of the Service Mark stemming from a potential license agreement from Roberts Enterprises. *See* Opposition Brief at 13-15.

Fun Sport's Opposition Brief refers the Court to various correspondence between the parties wherein it was represented "that either the license would be 'reasonable,' or would 'closely mirror' Roberts' license agreement with ▇▇▇▇▇▇ (*citations omitted*). Opposition Brief at 12. Roberts Enterprises does not dispute that the license would have to be "reasonable" or "closely mirror" the ▇▇▇ license agreement. In fact, the draft license agreement sent to Fun Sport was both reasonable and closely mirrored the ▇▇▇ license agreement (*See* August 20, 2007 emails after Fun Sport's acceptance of July 27, 2007 stating that the attached license agreement "closely mirrors our other license agreements."). Roberts Enterprises Memo Ex. 6.

As noted above, Fun Sport had expressly stated that it would not agree to a license that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Roberts Enterprises Memo Ex. 3. This concern informs the meaning of the term "reasonable" as used by Fun Sport in its communications -- Fun Sport wanted to make sure there was not ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ arising out of the license agreement to protect Roberts Enterprises' Service Mark. For this reason, Roberts Enterprises provided a copy of the ▇▇▇ license agreement as an assurance that a contemplated license agreement closely mirroring that agreement would not contain any unreasonable terms relating to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. The license agreement proffered by Roberts Enterprises complies with the only test of "reasonableness" contemplated by the parties at the time the offer and acceptance were made.

8

Fun Sport's only argument that the draft license agreement sent to Fun Sport on August 20, 2007 was either unreasonable or did not closely mirror the ▉▉▉ license agreement, is its allegation that a reasonable license agreement would have ▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉ *See* Opposition Brief at 12-15. Fun Sport, however, was fully aware that Roberts Enterprises could not grant Fun Sport ▉▉▉▉▉▉ without Roberts Enterprises entering a negotiation regarding such with ▉▉▉ and Fun Sport had no justification to expect Roberts Enterprises to negotiate such ▉▉▉▉▉▉▉ without even a mere request to do so from Fun Sport. *See* Opposition Brief at 4. Fun Sport's Opposition Brief does not dispute that Fun Sport never requested ▉▉▉▉▉ from Roberts Enterprises prior to acceptance of the agreement. *See* Opposition Brief at 13 ("None of the documents, from either party, discuss or even mention ▉▉▉▉▉▉▉▉▉▉"). ▉▉▉▉ was not discussed because Fun Sport never asked for ▉▉▉▉ as a term of the license or settlement agreement. Certainly it was not Roberts Enterprises responsibility or duty to offer ▉▉▉▉ to make the license "reasonable." ▉▉▉▉ license agreements are negotiated and entered into by parties every day.

Fun Sport openly admits that it was "fully aware of the extent of the ▉▉▉▉▉▉ ▉▉▉▉▉▉," which included ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Opposition Brief at 14; *see also* Fun Sport Opposition Ex. 2 at 13 (the ▉▉▉ license providing the territory as ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉); Fun Sport Opposition Ex. 2 at 5-6 (the ▉▉▉ license providing ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉); Fun Sport

Opposition Ex. 2 at 3 (the ▮▮▮▮ license providing "▮▮▮▮

▮▮▮▮

▮▮▮▮

▮▮▮▮▮▮▮▮). Roberts Enterprises did not hide the fact that ▮▮▮▮ had those rights under its license with Roberts Enterprises but rather, Roberts Enterprises gave Fun Sport the ▮▮▮▮ license and was specific in every correspondence with Fun Sport as to the extent of any rights Fun Sport would obtain through the grant of a license with Roberts Enterprises. *See* Roberts Enterprises Memo at 3. Furthermore, Roberts Enterprises made it very clear in every correspondence that ▮▮▮▮ ▮▮▮▮ the Fire Mountain location at Highway One at Midway, Rehoboth Beach, Delaware 19971. *See* May 18, 2007 letter, Hardaway to Denny, at 2 (▮▮▮▮

▮▮▮▮); June 29, 2007 letter, Hardaway to Denny (discussing a license fee ▮▮▮▮

▮▮▮▮); July 25, 2007 letter, Allen to Denny (discussing a license fee ▮▮▮▮

▮▮▮▮").

Fun Sport cannot now claim that even though it was fully aware of the extent of the ▮▮▮▮ ▮▮▮▮ ▮▮▮▮, that somehow it was justified in believing that it would obtain ▮▮▮▮, even though this was never part of the negotiation. At all times during negotiations and prior to acceptance of the agreement, Fun Sport could have requested ▮▮▮▮. Fun Sport never requested

such ███████████ prior to acceptance and therefore, it could not expect for Roberts Enterprises to proactively take ████████████████████████ ████████[3] These factors clearly lead one to conclude that if Fun Sport had intended to obtain ██████████████, it had a duty to negotiate such ████████ prior to acceptance of the settlement offer, especially when the stated purpose of the license agreement in all of the settlement negotiations was only to protect the Service Mark.

3.  **This Court Should Compel Specific Performance of the Agreement.**

Roberts Enterprises has shown by clear and convincing evidence that a valid contract exists. *See Alro Associates, L.P. v. Hayward*, C.A. No. 19544, 2003 WL 22594526, at 7-8 (Del. Ch. Oct. 31, 2003). Furthermore, the balance of equities clearly weigh in favor of enforcing the valid settlement agreement entered into between the parties. *See Dittrick v. Chalfant*, C.A. No. 2156-VCL, 2007 WL 039548 at 5 (Del. Ch. Apr. 4, 2007).

Fun Sport's consideration for entry into the settlement and license agreement is completely supported. Fun Sport agreed to accept a reasonable license "that protects the Service Mark" so that Fun Sport could conclude with this lawsuit and continue to use Roberts Enterprises federally registered Service Mark. *See* Roberts Enterprises Memo Exs. 3-5. Fun Sport's Opposition Brief even states "Fun Sport does not dispute that it agreed to settle this matter for ██████████████ . . . in exchange for a 'reasonable' license agreement with Roberts." Opposition Brief at 16. Once again, Fun Sport conveniently fails to complete it sentence that it agreed to enter "into a reasonable settlement/license agreement *that protects the*

---

[3] Fun Sport minimizes the magnitude of the concession to be expected of ████████ after Fun Sport's acceptance of the settlement offer in stating that its proposed ████████████████████████████████████████ ████████████████████████████ This, of course, neglects the reality that the ████████████ within which ████████████████████████████████████, includes a substantial amount of ████████████████ ██████████████. Thus the ████████████████ proposed by Fun Sport is closer to ████████ of ████████████████████. *See* Roberts Enterprises Memo at 8.

*Service Mark.*" Roberts Enterprises Memo Ex. 3. Nowhere in the record did the parties agree that license would *also* serve the purpose of conveying to Fun Sport [redacted] and Fun Sport has failed to direct the Court to any language providing otherwise.

Fun Sport next argues that evidentially a license agreement cannot be reasonable if it does not include at least some [redacted]. *See* Opposition Brief at 16. [redacted] license agreements are entered into every day. Further, Fun Sport had in its hands at all times during the negotiation the license agreement between Roberts Enterprises and [redacted], which expressly gives [redacted] the right to operate and sublicense a miniature golf facility using the Service Mark in [redacted]. *See* Opposition Brief at 4; *see also* Roberts Enterprises Memo at 3. Fun Sport does not even assert that it failed to fully comprehend this provision prior to its acceptance of the settlement agreement with Roberts Enterprises. *See* Opposition Brief at 4. Roberts Enterprises should not be prejudiced simply because Fun Sport failed to request [redacted] prior to acceptance.

Roberts Enterprises has at all times acted in good faith with Fun Sport regarding the settlement and license agreement. As noted in Fun Sport's Opposition Brief, Roberts Enterprises even volunteered "that something might be worked out whereby Roberts would agree n[redacted] [redacted] [redacted]." Opposition Brief at 9. Roberts Enterprises was not required to extend this under the agreement but did so in good faith. Roberts Enterprises may have even been able to further negotiate with [redacted] [redacted]; however, Fun Sport never requested one until after negotiations were complete.

Fun Sport attempts to persuade this Court into believing that the license agreement is unreasonable because it allegedly "provides no benefit whatsoever to Fun Sport." Opposition

12

Brief at 16. Fun Sport argument is entirely misguided. Fun Sport clearly derives benefit through (1) dismissal of the present lawsuit and (2) the use of Roberts Enterprises' Service Mark. If Fun Sport's argument rang true that it would not derive any benefit from using Roberts Enterprises Service Mark, it could simply remove the airplane that stands at the center of this controversy. The avoidance of the cost of removing the airplane is thus at least one benefit to Fun Sport of the license agreement. Furthermore, Fun Sport's assertions that the airplane "is not like McDonald's golden arches" completely misses the point of this motion to enforce the settlement agreement. Under the law, a federally registered Service Mark is given a statutory presumption of validity and constructive notice across the United States. 15 U.S.C. § 1057 (b), (c). The strength of Roberts Enterprises Service Mark is not ripe for review at this juncture, and has absolutely nothing to do with the fact that Fun Sport entered a fully enforceable contract.

Fun Sport agreed to enter a license agreement that protects the Service Mark and never requested █████████████ during negotiations. If a ████████████████████ was so important to Fun Sport, certainly such a term would have been negotiated up front or at least prior to its acceptance of the essential terms of the agreement. Instead, no ██████████████ was requested so Fun Sport could not reasonably believe that it could get ██████████████. Fun Sport is clearly attempting to back out of the settlement agreement because of a change of heart, not because of some missing essential term it never requested and knew it could not get. Accordingly, Roberts Enterprises has shown by clear and convincing evidence that a valid contract exists and the equities clearly weigh in favor of enforcing the valid settlement agreement entered into by Fun Sport in its correspondence dated July 27, 2007.

### III. CONCLUSION

For the foregoing reasons and the reasons provided in Roberts Enterprises Memorandum in Support of its Motion to Enforce Settlement Agreement, Roberts Enterprises respectfully requests that the court grant its motion and issue an Order enforcing the valid settlement to which Fun Sport previously agreed.

Respectfully submitted,

Rex A. Donnelly
Rex A. Donnelly, IV (Delaware ID # 3492)
RatnerPrestia
1007 Orange Street, Suite 1100
Post Office Box 1596
Wilmington, Delaware 19899
PHONE: 302.778.2500
FACSIMILE: 302.778.2600
radonnelly@ratnerprestia.com

Of Counsel:

John B. Hardaway III (Federal ID # 1710)
Amy E. Allen (Federal ID #9722)
NEXSEN PRUET ADAMS KLEEMEIER, LLC
201 W. McBee Avenue, Suite 400 (29601)
Post Office Drawer 10648
Greenville, South Carolina 29603-0648
PHONE: 864.370.2211
FACSIMILE: 864.282.1177
jhardaway@nexsenpruet.com

Attorneys for Plaintiff
Roberts Enterprises, LP

October 22, 2007
Public Version dated: October 29, 2007
Wilmington, Delaware

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2007, that the attached document was electronically filed with the Clerk of Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on October 29, 2007, I have electronically mailed the document to the following person(s):

Richard L. Horwitz
William R. Denny
James M. Kron
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
***Counsel for Defendant***

/s/Rex A. Donnelly
Rex A. Donnelly, IV (#3492)
RatnerPrestia
Nemours Building, Suite 1100
1007 Orange Street
Wilmington, DE 19801
(302) 778-2500
radonnelly@ratnerprestia.com