IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERTS ENTERPRISES, LP<br>d/b/a MAYDAY GOLF | )<br>)<br>) | |
| Plaintiff, | )<br>) | C.A. No. 06-490-JJF |
| v. | )<br>)<br>) | **PUBLIC VERSION** |
| FUN SPORT, INC. d/b/a MIDWAY<br>SPEEDWAY, d/b/a FIRE MOUNTAIN<br>GOLF, and d/b/a FIRE MOUNTAIN<br>RESCUE MINI-GOLF | )<br>)<br>)<br>)<br>) | |
| Defendant. | ) | |

## MOTION FOR LEAVE TO FILE A SUR-REPLY BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT

Richard L. Horwitz (#2246)
William R. Denny (#2580)
James M. Kron (#3898)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19889-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
wdenny@potteranderson.com
jkron@potteranderson.com

Dated: November 1, 2007
Public Version Dated: November 8, 2007
830537 / 29926

*Attorneys for Defendant Fun Sport, Inc.*

Defendant Fun Sport, Inc. ("Fun Sport") by and through its undersigned counsel, hereby moves for the right to file a Sur-Reply Brief in opposition to plaintiff Roberts Enterprises, Inc.'s ("Roberts") Motion to Enforce Settlement Agreement (attached as Exhibit A hereto). The grounds for this motion are as follows:

1. On September 28, 2007, Roberts filed a motion and accompanying memorandum of law to enforce a purported settlement agreement between itself and defendant Fun Sport. ("Opening Brief" or "OB") (D.I. Nos. 42, 43). Roberts argued in its Opening Brief that Fun Sport had accepted a legally enforceable settlement agreement, and "clearly understood all the essential terms of the settlement." (OB at 12).

2. Fun Sport filed its Answering Brief in Opposition to Roberts' motion on October 10, 2007 ("Answering Brief") (D.I. No. 47). In its Answering Brief, Fun Sport argued that it had never agreed to the terms represented in Roberts' Opening Brief, and further, that the record of correspondence between the parties was vague and ambiguous on specific essential terms of a trademark license agreement that was key to the settlement agreement.

3. Roberts filed its Reply Brief in support of its motion on October 22, 2007 ("Reply Brief" or "RB"). It is Fun Sport's position, which Roberts disputes, that Roberts used its reply to introduce new arguments concerning the alleged "sole purpose" of the license agreement. (RB at 1, 8). Specifically, it is Fun Sport's position that Roberts' Opening Brief never argued or suggested that the parties had agreed on *any* purpose for the license agreement, let alone a "sole purpose." Moreover, Roberts' new "sole purpose" argument was not responsive to any issues raised in Fun Sport's Answering Brief, because that brief made no mention whatsoever to any purpose for any document. Roberts disputes Fun Sport's position and asserts that its "sole

1

purpose" argument was responsive to the issue raised in Fun Sport's Answering Brief relating to the unreasonableness of the proposed license.

4. As the moving party, Roberts had the obligation to present all legal argument and factual support encompassed by its motion to enforce a purported settlement agreement in its Opening Brief and not reserve material for its Reply Brief. Local Rule 7.1.3 (c)(2) expressly provides that, "the party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief."

5. On October 30, 2007, Fun Sport's counsel advised Roberts' counsel that Roberts' Reply Brief exceeded its permissible scope by raising new arguments that were not responsive to issues raised in Fun Sport's Answering Brief. (Email from William Denny to Amy Allen attached as Exhibit B hereto) Fun Sport further advised Roberts' counsel that Fun Sport intended to move to strike Roberts' Reply Brief on the ground that it improperly raised new arguments, or, in the alternative, for permission to file a sur-reply. (*Id.*)

6. Roberts' counsel responded on October 31, 2007 that it did not believe its Reply Brief exceeded its permissible scope, and thus a sur-reply was neither necessary nor appropriate. To avoid unnecessary motions practice on this issue, however, Roberts agreed that it would not oppose Fun Sport's motion to file a sur-reply. (Email from Amy Allen to William Denny attached as Exhibit C hereto).

7. Roberts counsel also requested an opportunity to review Fun Sport's motion prior to filing. In accordance with that request, Fun Sport delivered to Roberts' counsel a draft copy of the instant motion prior to filing.

WHEREFORE, for the above reasons, Defendant Fun Sport, Inc. respectfully requests that the Court grant it the right to file the Sur-Reply Brief attached as Exhibit A hereto to be filed and served within three (3) business days of the Court's granting of this Motion.

          POTTER ANDERSON & CORROON LLP

By:   */s/ James M. Kron*
      Richard L. Horwitz (#2246)
      William R. Denny (#2580)
      James M. Kron (#3898)
      Hercules Plaza, 6th Floor
      1313 North Market Street
      P.O. Box 951
      Wilmington, Delaware 19889-0951
      Tel: (302) 984-6000
      rhorwitz@potteranderson.com
      wdenny@potteranderson.com

Dated: November 1, 2007
Public Version Dated: November 8, 2007

      jkron@potteranderson.com

*Attorneys for Defendant Fun Sport, Inc.*

830537 / 29926

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERTS ENTERPRISES, LP<br>d/b/a MAYDAY GOLF<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>FUN SPORT, INC. d/b/a MIDWAY<br>SPEEDWAY, d/b/a FIRE MOUNTAIN<br>GOLF, and d/b/a FIRE MOUNTAIN<br>RESCUE MINI-GOLF<br><br>　　　　　　Defendant. | )<br>)<br>)<br>)  C.A. No. 06-490-JJF<br>)<br>)<br>)  **PUBLIC VERSION**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT FUN SPORT, INC.'S SUR-REPLY BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Richard L. Horwitz (#2246)
William R. Denny (#2580)
James M. Kron (#3898)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19889-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
wdenny@potteranderson.com
jkron@potteranderson.com

*Attorneys for Defendant Fun Sport, Inc.*

Dated: November 1, 2007
Public Version Dated: November 8, 2007

## NATURE AND STAGE OF PROCEEDINGS

On September 28, 2007, plaintiff Roberts Enterprises, Inc. ("Roberts") filed a motion and accompanying memorandum of law to enforce a purported settlement agreement between itself and defendant Fun Sport, Inc. ("Fun Sport"). ("Opening Brief" or "OB") (D.I. Nos. 42, 43). Fun Sport filed its Answering Brief in Opposition to Roberts' motion on October 10, 2007 ("Answering Brief" or "AB") (D.I. No. 47). On October 22, 2007, Roberts filed its Reply Brief ("Reply Brief" or "RB") (D.I. No. 49), in which it presented new legal arguments not raised in its Opening Brief, and that were not responsive to arguments presented in Fun Sport's Answering Brief. Fun Sport respectfully offers this Sur-Reply to those newly raised issues and legal arguments.

## ARGUMENT

Roberts' Reply Brief raises two entirely new arguments in an attempt to bolster Roberts' Opening Brief. First, Roberts argues that the "sole" purpose of the license agreement is *"to protect Roberts Enterprises' federally registered Service Mark."* (RB at 1) (emphasis original). Second, Roberts relies upon this late-blooming "sole-purpose" theory to argue that the non-exclusive license that it seeks to press upon Fun Sport is "reasonable", and Fun Sport is thus obligated to accept it. Neither of these arguments are supported by the record.

Roberts' first argument fails because the record is devoid of evidence that the parties even discussed the license agreement's "purpose", let alone agreed that the sole purpose was to protect Roberts' service mark. (RB at 3). Roberts also points to nothing in the record to suggest that Fun Sport ever agreed that the license agreement's "sole" purpose was to protect Roberts' service mark, without a concurrent purpose of satisfying Fun Sport's interests.

Roberts points to numerous instances in which the parties agreed that a license agreement would protect the viability of the service mark, but nothing whatsoever to suggest that

this was the "sole" purpose. Indeed, Roberts' Opening Brief identified four goals for the settlement negotiations. (OB at 7). This is not to say that Fun Sport agrees with Roberts' representations regarding the purposes of the settlement talks, merely that Roberts' "sole purpose" argument is inconsistent with its earlier representations.

Roberts' new "sole-purpose" argument also fails because, even if true, it is irrelevant to the matter before the Court. Even if Fun Sport agreed with Roberts' new argument, which it does not, that alone does not establish the existence of an enforceable contract between Roberts and Fun Sport. More than a mutually agreed upon purpose is required.

A simple example reveals the fallacy of Roberts' argument. Consider a hypothetical individual who wishes to build a new house. That individual may agree with a particular contractor that he will hire the contractor to build a "reasonable" house, and the purpose of that contract will be to build that house. That agreement alone does not create a binding contract. The individual and contractor must still negotiate the price of the house, where it will be built, how large it will be, and a multitude or other issues. Roberts' argument that Fun Sport obligated itself to accept any license that Roberts chose to offer as long as the license protected Roberts' service mark is analogous to the hypothetical individual agreeing to enter into any contract to build any house, and then being forced to accept whatever the contractor constructed with no control over when or where the contractor will build the house, how large it will be, or what the house will look like. While the Court may consider the parties' intentions when construing an ambiguous contract, the contract must first exist.

Roberts' "sole purpose" theory also fails because it erroneously asserts that the purpose of protecting Roberts' service mark necessarily precludes all other purposes. Roberts argues that the conveyance of an exclusive territory to Fun Sport is contrary to the purported soel

2

purpose of protecting Roberts' service mark. (RB at 1, 7). However, the exemplar license agreements upon which Roberts relies for its assertions about what Fun Sport knew or should have known all contain both exclusivity provisions and terms to protect Roberts' service mark. (RB at 4). Roberts cannot reasonably argue that the same provisions that peacefully coexist in Roberts' other license agreements are contradictory and mutually exclusive when included in a license agreement with Fun Sport.

Roberts also argues that, because Fun Sport allegedly agreed that the "sole purpose" of the license agreement was to protect Roberts' service mark, Fun Sport necessarily agreed that conveyance of an exclusive territory to Fun Sport was unnecessary to make the license agreement "reasonable." Roberts attempts to bolster this dubious argument with an assertion that "Fun Sport knew or should have known that an exclusive territory was not part of the agreement" (RB at 3), and that "Roberts Enterprises made it very clear in every correspondence that the only and sole territory being conveyed to Fun Sport was the Fire Mountain location" (RB at 10). Contrary to Roberts' representations, none of its correspondence was clear on this issue. Roberts points to its May 18, 2007 letter in which it represented that "the license will only extend to your Miniature Golf Facility" (RB at 10), but points to nothing to clarify the phrase "only extend." While Roberts may argue that it knew what the term meant, the record is devoid of evidence that Fun Sport shared the same meaning. As noted in Fun Sport's Answering Brief, its objective manifestations in its correspondence to Roberts construed the term to mean that Fun Sport could only operate a single miniature golf course. Nothing suggests that Fun Sport understood the term to mean that it would have no protection from the licensees of Roberts competing in its immediate vicinity.

3

Roberts also presents the unsupported argument that Fun Sport implicitly accepted a zero-exclusivity license agreement when it failed expressly to request such exclusivity. The first problem with this argument is that it necessarily assumes that Fun Sport knew it needed to ask for such a provision, and further knew that the license agreement that Roberts intended offer would be materially different than the exemplar license agreements that Roberts had produced. As is discussed elsewhere in this brief, the exemplar license agreements that Roberts produced included both exclusivity provisions and terms necessary to protect Roberts' service mark. Roberts represented that it would enter into a license agreement with Fun Sport that "closely-mirrored" those exemplars. Having presented its other license agreements as examples of the type of agreement that it would offer Fun Sport, it was Roberts' duty to identify how it intended to alter those examples. It is patently unfair for Roberts to represent that it would offer a license that "closely-mirrored" the examples, and then argue that Fun Sport failed to ask for what Roberts had already implicitly promised it would deliver.

Roberts' argument that Fun Sport should have known what Roberts intended to do is simply untenable. Roberts points to ambiguous references in its correspondence that the license would only "extend to" Fun Sport's existing miniature golf course, but can point to nothing in the record to establish that Fun Sport actually knew that Roberts intended to delete the exclusivity provision from the exemplar license agreements, or that Fun Sport actually agreed to such terms.

Roberts' argument that Fun Sport's knowledge of the existing license agreements put it on notice that Roberts would delete all references to exclusivity from the license is equally unavailing. Roberts asserts that Fun Sport "was fully aware that Roberts Enterprises could not grant Fun Sport an exclusive territory without Roberts Enterprises entering into a negotiation

regarding such with ▓▓▓▓" (RB at 9), but admitted in its Opening Brief that its "settlement was enabled by a side agreement between ▓▓▓▓ and Roberts Enterprises in which ▓▓▓▓ agreed to an exception to its exclusive licensed territory." (OB at 3).

It is undisputed, therefore, that Roberts had to negotiate with ▓▓▓▓, the only question was how those negotiations would play out. Certainly, ▓▓▓▓ had to relinquish some of this territory, even if, as Roberts now asserts, it was only to the limits of Fun Sport's property. Roberts said nothing whatsoever about these negotiations, however, until after Fun Sport had accepted Roberts offer of a "reasonable" license agreement, and then rejected a license agreement from which all exclusivity references had been excised.

An unspoken issue in this matter is the role that ▓▓▓▓ played in the negotiations that underlie Roberts' motion. Roberts argues that the "sole purpose" of the license agreement was to protect its service mark. It is clear, however, that the entity with whom Fun Sport was really negotiating was not Roberts Enterprises, Inc., but rather ▓▓▓▓, whose purpose was arguably not to protect Roberts' service mark, but rather to protect its exclusive territory, including Rehoboth Beach, Delaware. This, of course, was never revealed to Fun Sport. As noted above, Roberts concedes that it needed a "side agreement" with ▓▓▓▓ before it could offer Fun Sport anything. Moreover, Roberts' September 5, 2007 counteroffer represented that something might be worked out whereby Roberts would agree not to directly license any other courses within a ten-mile radius of Fun Sport's facility, but said nothing about limiting ▓▓▓▓ right to open additional facilities in Rehoboth Beach, Delaware. (AB Ex. 15). Roberts, therefore, was not averse to granting Fun Sport the exclusive territory it requested, but ▓▓▓▓ would not agree to such a provision. Thus, while Roberts' sole

5

purpose in entering into a license agreement might have been to protect its service mark, ███ ████████████, clearly had other goals in mind.[1]

Only Roberts can say whether it had a "sole purpose" in negotiating a license agreement with Fun Sport. However, the record demonstrates that if such a "sole purpose" existed, only Robert knew about it. Fun Sport never negotiated or accepted that a "sole purpose" existed, nor did Roberts' ████████████, share that purpose, and Fun Sport certainly never agreed to accept a license agreement with zero exclusivity.

## CONCLUSION

For the reasons stated herein, Roberts Enterprises, Inc.'s Motion To Enforce Settlement Agreement should be DENIED.

POTTER ANDERSON & CORROON LLP

By:  /s/ William R. Denny
Richard L. Horwitz (#2246)
William R. Denny (#2580)
James M. Kron (#3898)
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, Delaware 19889-0951
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
wdenny@potteranderson.com
jkron@potteranderson.com

Dated:  November 1, 2007
Public Version Dated: November 8, 2007

830509 / 29926

*Attorneys for Defendant Fun Sport, Inc.*

---

[1] Roberts asserts that it is completely unaware of any plans by its ████████████ to expand into the Rehoboth Beach, Delaware area. (RB at n.1) This does not mean, however, such plans do not exist, merely that ███████ has not revealed them to Roberts. Indeed, ███████ recalcitrance on the exclusivity question supports the rumor of ███████ planned expansion into the Rehoboth Beach, Delaware area.

6

# EXHIBIT B

```
                          Denny to Allen - 10-30-07.txt
From: Denny, William R.
Sent: Tuesday, October 30, 2007 3:22 PM
To: 'Allen, Amy E.'
Cc: Hardaway, John B. III; Rex Donnelly; Kron, James M.
Subject: Fun Sport

Contacts: Amy E. Allen

Amy:

Following up on my voicemail message to you, we have reviewed your client's reply
brief, and we believe that it is making new arguments in its reply brief that should
have been in its opening brief. Namely, Roberts is arguing for the first time that
the alleged "sole purpose" of the license agreement is to protect the mark. It is
unfair to present such an argument for the first time in reply. Therefore, we
intend to move the Court to strike the reply, or alternatively to permit Fun Sport
to file a surreply.

Please let me know your client's position with respect to our intended motion.
Thank you.

Bill

William R. Denny
Partner
Potter Anderson & Corroon LLP
1313 N. Market St., 6th Floor
P.O. Box 951
Wilmington, DE 19899
(302) 984-6039
(302) 778-6039 (fax)
Email: wdenny@potteranderson.com
http://www.potteranderson.com

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the
IRS, we inform you that any U.S. federal tax advice contained in this communication
(including any attachments) is not intended or written to be used, and cannot be
used, for the purpose of (a) avoiding penalties under the Internal Revenue Code or
(b) promoting, marketing or recommending to another party any transaction or matter
addressed herein.

This electronic mail transmission may contain confidential or proprietary
information intended only for the person(s) named. Any use, distribution, copying
or disclosure by another person is strictly prohibited.




                                        Page 1
```

# EXHIBIT C

```
                        Allen to Denny - 10-31-07.txt
From: Allen, Amy E. [AAllen@nexsenpruet.com]
Sent: Wednesday, October 31, 2007 3:09 PM
To: Denny, William R.
Cc: Hardaway, John B. III; Rex Donnelly; Steading, Kathy J.; Kron, James
M.
Subject: RE: Fun Sport
```

Bill,

We do not believe that our reply brief exceeded its permissible scope. We specifically focused on responding to your client's opposition brief. Therefore, we would most certainly oppose any motion to the Court to strike our reply brief.

While we do not think a surreply is necessary or appropriate, we also do not think it makes sense to engage in motion practice on that point. Accordingly, we will not oppose the motion to file a surreply limited to the "sole purpose" issue and limited to a reasonable length of approximately 5 pages. Please make it clear in the motion that even though Plaintiff does not oppose the filing of a surreply subject to these conditions, it does not mean that Plaintiff believes it is appropriate for the Court to consider the surreply, which we leave for the Court to determine. Furthermore, I would like to review the motion prior to your filing to make sure it is in-line with our agreement not to oppose.

If you have any questions, let me know.

Sincerely,
Amy

```
-----Original Message-----
From: Denny, William R. [mailto:wdenny@potteranderson.com]
Sent: Tuesday, October 30, 2007 3:22 PM
To: Allen, Amy E.
Cc: Hardaway, John B. III; Rex Donnelly; Kron, James M.
Subject: Fun Sport
```

Amy:

Following up on my voicemail message to you, we have reviewed your client's reply brief, and we believe that it is making new arguments in its reply brief that should have been in its opening brief. Namely, Roberts is arguing for the first time that the alleged "sole purpose" of the license agreement is to protect the mark. It is unfair to present such an argument for the first time in reply. Therefore, we intend to move the Court to strike the reply, or alternatively to permit Fun Sport to file a surreply.

Please let me know your client's position with respect to our intended motion. Thank you.

Bill

William R. Denny
Partner
Potter Anderson & Corroon LLP
1313 N. Market St., 6th Floor
P.O. Box 951
Wilmington, DE 19899
(302) 984-6039
(302) 778-6039 (fax)
Email: wdenny@potteranderson.com
http://www.potteranderson.com

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the

Page 1

Allen to Denny - 10-31-07.txt

IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of
(a) avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This electronic mail transmission may contain confidential or proprietary information intended only for the person(s) named. Any use, distribution, copying or disclosure by another person is strictly prohibited.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

    I, James M. Kron, hereby certify that on November 1, 2007, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

    I further certify that on November 1, 2007, I have Electronically Mailed the documents to the following person(s):

| | |
|---|---|
| Rex A. Donnelly, IV<br>Ratner & Prestia<br>1007 Orange Street, Suite 1100<br>P.O. Box 1596<br>Wilmington, DE 19899-1596<br>radonnelly@ratnerprestia.com | John B. Hardaway III<br>Amy E. Allen<br>Nexsen Pruet Adams Kleemeier, LLC<br>201 W. McBee Avenue, Suite 400 (29601)<br>Post Office Drawer 10648<br>Greenville, SC  29603-0648<br>jhardaway@nexsenpruet.com<br>aallen@nexsenpruet.com |

                                                */s/ James M. Kron*
                                                Richard L. Horwitz (#2246)
                                                William R. Denny (#2580)
                                                James M. Kron (#3898)
                                                Potter Anderson & Corroon LLP
                                                Hercules Plaza
                                                P. O. Box 951
                                                Wilmington, DE 19899
                                                (302) 984-6000
                                                rhorwitz@potteranderson.com
                                                wdenny@potteranderson.com
                                                jkron@potteranderson.com

751485 / 29926