```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF DELAWARE
```

ROBERTS ENTERPRISES, LP,         :
d/b/a MAYDAY GOLF,               :
                                 :
            Plaintiff            :    Civil Action No. 06-490 JJF
                                 :
    v.                           :
                                 :
FUN SPORT, INC., d/b/a           :
MIDWAY SPEEDWAY, d/b/a           :
FIRE MOUNTAIN GOLF, and          :
d/b/a RESCUE MINI-GOLF,          :
                                 :
            Defendant            :

                        **MEMORANDUM ORDER**

Pending before the Court are Plaintiff Roberts Enterprises, LP's Motion to Enforce Settlement Agreement (D.I. 42) and Defendant Fun Sport, Inc.'s Motion for Leave to File a Sur-Reply Brief in Opposition to Plaintiff's Motion to Enforce Settlement Agreement (D.I. 51.) For the reasons discussed, the Court will deny Plaintiff Roberts Enterprises, LP's Motion to Enforce Settlement Agreement.[1]

**I.   BACKGROUND**

On August 7, 2006, Plaintiff Roberts Enterprises, LP

---

[1] The Court further concludes that Fun Sport's Motion to File a Sur-Reply Brief will be granted. Fun Sport contends that Roberts Enterprises raised new arguments in its Reply Brief in support of its Motion to Enforce Settlement. Roberts Enterprises disputes this contention, but has not opposed Fun Sport's Motion. After reviewing the parties' briefs, the Court concludes that Roberts Enterprises' argument regarding the sole purpose of the settlement agreement is raised for the first time in their Reply Brief. Accordingly, Fun Sport's Motion for Leave to File a Sur-Reply Brief will be granted.

("Roberts Enterprises") initiated this action against Defendant Fun Sport, Inc. ("Fun Sport"), alleging that Defendant violated the Federal Trademark Act of 1946, as amended, 15 U.S.C. § 1051, by suspending an authentic airplane above its miniature golf course. (D.I. 1.)  Roberts Enterprises filed a Motion to Enforce Settlement Agreement on September 28, 2007, requesting the Court to enforce a settlement agreement allegedly reached between the parties. (D.I. 42.)  A joint Motion to Stay the Scheduling Order pending resolution of Roberts Enterprises' Motion to Enforce Settlement Agreement was granted on October 5, 2007.  (D.I. 46.) Fun Sport's Answering Brief in opposition to Roberts Enterprises' Motion to Enforce Settlement was filed on October 10, 2007. (D.I. 47.)  Roberts Enterprises filed a Reply to Fun Sport's Answering Brief on October 22, 2007 (D.I. 49), and in turn, Fun Sport filed a Motion for Leave to File a Sur-Reply Brief on November 1, 2007.  (D.I. 51.)

## II. PARTIES' CONTENTIONS

By its Motion to Enforce Settlement, Roberts Enterprises contends that a settlement agreement was reached with Fun Sport on July 27, 2007, and that the parties agreed to all essential terms of a valid and enforceable contract.  Specifically, Roberts Enterprises contends that, at all times during settlement negotiations, Fun Sport was aware that BMS Golf held an exclusive license from Roberts Enterprises for use of the registered

2

service mark and trade dress. Roberts Enterprises further contends that all communications were explicit that any potential license agreement would not grant Fun Sport any zone of exclusive use beyond its existing location due to the exclusive territory provision in BMS Golf's license.

In response, Fun Sport contends no settlement agreement was reached with Roberts Enterprises because there was no agreement between the parties on all essential terms of a contract. Specifically, Fun Sport argues that it never accepted a license agreement without a zone of exclusivity. Further, Fun Sport contends that the territorial reach of the license was never discussed, and that they understood references to BMS Golf's exclusive license to mean that Fun Sport would refrain from using the registered service mark and trade mark at any other location, not that Fun Sport would receive no zone of exclusivity under their licensing agreement.

## III. LEGAL STANDARD

A voluntary agreement to settle a lawsuit is binding upon the parties even if not memorialized in writing, and regardless of whether it is made in the presence of the Court. Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970)(citations omitted). A district court has jurisdiction to enforce a settlement agreement between litigants in a case pending before it. Leonard v. University of Delaware, 204 F. Supp. 2d 784, 786

(D. Del. 2002)(citing <u>Hobbs & Co. v. American Investors Mgt., Inc</u>, 576 F.2d 29, 33 (3d Cir. 1978)). A motion to enforce settlement should be reviewed under the same standard as a motion for summary judgment: the non-movant's assertions must be treated as true; the non-movant must be given the benefit of the doubt when their assertions conflict with the movant's assertions; and the movant must be entitled to enforcement as a matter of law. <u>See</u> <u>Tiernan v. Devoe</u>, 923 F.2d 1024, 1031-32 (3d Cir. 1991).

## IV. DISCUSSION

The Court concludes that Roberts Enterprises and Fun Sport have not entered into an enforceable settlement agreement, and accordingly Roberts Enterprises' Motion will be denied. A settlement agreement is a contract subject to the local laws of contract interpretation. <u>Wilcher v. City of Wilmington</u>, 139 F.3d 366, 372 (3d Cir. 1998)(citing <u>Pennwalt Corp v. Plough, Inc.</u>, 676 F.2d 77, 79 (3d Cir. 1982)). The parties do not dispute that Delaware law governs this contract dispute. <u>See</u> (D.I. 43 at 7) and (D.I. 47 at 11). Under Delaware law, the subjective intent of the parties is irrelevant, and the existence of a contract is determined solely by the parties' objective intent. <u>Id</u>. at 372-73 (citing <u>Industrial America, Inc. v. Fulton Indus., Inc.</u>, 285 A.2d 412, 415 (Del. 1971)). The Court must inquire "whether a reasonable man would, based upon the 'objective manifestation of assent' and all of the surrounding circumstances, conclude that

the parties intended to be bound by contract." Id. at 373 (citing Leeds v. First Allied Connecticut Corp., 521 A.2d 1095, 1101 (Del. Ch. 1986)). An enforceable contract has not been formed until "all of the terms that the parties themselves regard as important" have been resolved. Id.

In light of the amount of money involved and the obligations attendant with a licensing agreement, the Court finds that exclusivity of territory was an essential term to the proposed agreement, and that Roberts Enterprises and Fun Sport did not reach any objective agreement on that term. Roberts Enterprises claims that all communications "made clear that the territorial reach of the license . . . was non-negotiable" (D.I.43 at 8), but the evidentiary record before the Court, particularly the parties' correspondence, does not support this contention.

In its May 18, 2007 letter to Fun Sport, Roberts Enterprises stated that they intended any potential license agreement to closely mirror Roberts Enterprises' license agreement with BMS Golf, except that Fun Sport's license would only extend to Fun Sport's current miniature golf facility. (D.I. 44, Exh. 2). Fun Sport's letter in response stated that they would "agree not to build any more miniature golf courses with airplanes." (D.I. 47, Exh. 8). Roberts Enterprises contends that Fun Sport thus accepted the territory limitations as an essential term of the contract (D.I. 43 at 8). Fun Sport contends this language meant

5

Fun Sport was prohibited from building any additional miniature golf courses with airplane themes, not that their license would have no exclusivity zone. (D.I. 47 at 13). The record demonstrates that each party likely proceeded with settlement negotiations under its own interpretation of this language, and accordingly, the Court concludes that the parties were not in agreement on this contract term.

Further, the record shows that both parties viewed the exclusive territory provision of the license agreement as important, but substantially disagreed over its content. <u>Compare</u> (D.I. 47, Exh. 16)("it is necessary for [Fun Sport] to have some area of protection from other licensees of Roberts [Enterprises]") <u>with</u> (D.I. 44, Exh. 6)("[Roberts Enterprises] cannot grant you a license on an exclusive basis"). The significant differences between Roberts Enterprises' proposed territory provision of the license agreement and Fun Sports' proposed provision demonstrate that negotiations over territory had not been resolved. <u>See</u> (D.I. 44 at Exh. 5.) Finally, Fun Sport's July 27, 2007 email indicates that they did not regard negotiations on essential terms as fully resolved because they specifically made acceptance of Roberts Enterprises' offer "*subject to review and agreement* on the final terms of the settlement/ license agreement." (D.I. 47, Exh. 12)(emphasis added). Accordingly, the Court concludes that Robert Enterprises

has not met its burden of proving that all essential contract terms have been agreed upon, and thus, no enforceable settlement agreement exists.

## ORDER

NOW THEREFORE, IT IS HEREBY ORDERED that:

1.   Plaintiff Roberts Enterprises, LP's Motion to Enforce Settlement Agreement (D.I. 42) is **DENIED**.

2.   Defendant Fun Sport, Inc.'s Motion for Leave to File Sur-Reply Brief in Opposition to Plaintiff's Motion to Enforce Settlement Agreement (D.I. 51) is **GRANTED**.


March 7, 2008

_____
UNITED STATES DISTRICT JUDGE